### BENNETT v. GINSBERG et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1910.)

1. USURY (§ 53*)—USURIOUS TRANSACTIONS.

   A lender, not intending to make a usurious contract, may be paid for his trouble, time, and expense in collecting in the money for the loan, or for the expense of procuring the money.

   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 114–118; Dec. Dig. § 53.*]

2. TRIAL (§ 329*)—VERDICT—DETERMINATION OF ISSUES.

   Where, in an action on a note for $6,000 given for a loan for $5,500, the issue was whether the $500 was paid the payee solely for services in procuring the money for the loan, or whether any part of it was intended for interest, usurious or otherwise, and the jury during their deliberations inquired whether they could render a verdict for $5,500, and the court, on plaintiff waiving the alleged usurious sum, stated over defendant's objection that they could, a verdict for $5,500 must be set aside, because the question of usury was not determined.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 774–776; Dec. Dig. § 329.*]

Appeal from Trial Term, Kings County.

Action by Martin Bennett against Moses Ginsberg and another. From a judgment for plaintiff, and from an order denying a motion for new trial, defendants appeal. Reversed, and new trial granted.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

Samuel A. Telsey, for appellants.
Robert H. Roy, for respondent.

THOMAS, J. To the plaintiff, Ginsberg delivered his promissory note for $6,000, bearing no interest, payable to himself, and indorsed by himself and Kobre, and payable one month after its date, and for this received plaintiff's check for $5,500. Was usury taken? The plaintiff's brief describes the transaction as follows:

"Ginsberg applied to him for a loan on several occasions, and * * * he told Ginsberg he did not have the money to make the loan. * * * Ginsberg finally came to him and pleaded with him to help him out, as he was in danger of being ruined if he could not procure the money, and promised him $500 for his services in procuring the money. Being unable himself to furnish security to the bank upon which to obtain a loan of money, Bennett went to his wife, and said to her in effect: 'If you will let me use your stock as collateral with the bank to procure a loan of money that I want to advance to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ginsberg, I will give you the $500 which he was willing to pay me for procuring him a loan.' Thereupon his wife let him have her stock."

Thus expressed, the plaintiff agreed to loan $5,500, without interest, and was to be paid $500 for getting it to lend. He individually was the lender. The money loaned was his, although borrowed from the bank upon a note made by himself and wife, and secured by stock in part her property and in part his own. The wife was in no way privy to the transaction, and had no title to the money loaned or the note received. The plaintiff was willing to give her the money Ginsberg "was willing to pay" him "for procuring him a loan." From whom was the loan procured? From the plaintiff, not from the wife. She helped the plaintiff raise the money by lending her credit, and for that was to receive the $500; but the money was his own and he used it as his own. Hence there is no question of agency.

A lender, not intending to make a usurious contract, may be paid for his trouble, time, and expense in collecting in the money for the loan (Thurston v. Cornell, 38 N. Y. 281), or for the expense of procuring the money. (Morton v. Thurber, 85 N. Y. 550). Was the $500 to be paid solely for services? Was no part of it intended for interest, usurious or otherwise? This court would consider whether the verdict was against the weight of the evidence, if it did not appear that the jury had not passed upon the matter. The jury deliberated without agreement, and made inquiry whether it could bring in a verdict for the face of the check, and thereupon the plaintiff waived the alleged usurious sum. Then the jury was recalled and charged:

"In answer to your inquiry, 'Can the jury bring in a verdict for the face value of the check, $5,500?' I state that the plaintiff has waived the difference between $5,500 and $6,000, and therefore you can."

To this defendants excepted. The verdict was for $5,500. It was the duty of the jury to decide whether the defendants owed $6,000 principal, or nothing. There was an evident division, and a compromise considered, and inquiry made whether the court would permit the deduction. The court sanctioned it, and by sanctioning may have seemed to the jury to countenance a compromise. It is not a question of the right of the plaintiff to reduce his claim, but of permitting the jury to leave the question of usury undetermined, and to do a conceived equity. It was as if the plaintiff had said, "If you will find for $5,500, I will remit this item over which the controversy exists," and the court allowed such statement to be considered. Such a verdict on its face shows that the issue of usury was not decided.

It is no answer to assert, nor is it a known fact, that the defendants were thereby saved the payment of $500. If the jury had been held to the stern duty of finding the fact whether the debt was usurious, no verdict against the defendants might have resulted. If found that the defendants did not owe the $500, and if they did not owe that they did not owe the $5,500. This inevitably shows that the jury shunned the question, as well it might, as it was induced to do so.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.